UNITED STATES

v.

Matthew C. SAYLOR, 540–94–0734 Hull Maintenance Technician Third Class (E–4), U.S. Navy.

NMCM 93 01945.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 16 July 1993.

Decided 31 May 1994.

CDR Philip D. Cave, JAGC, USN, Appellate Defense Counsel.

LT David K. Herlihy, JAGC, USNR, Appellate Government Counsel.

Before REED, ORR and DeCICCO, JJ.

ORR, Senior Judge:

Pursuant to his pleas, the appellant was found guilty of disobeying a prohibition against the possession of drug paraphernalia and using LSD in violation, respectively, of Articles 92 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a. He was sentenced by the military judge to confinement for 2 months, the forfeiture of $540.00 pay per month for 2 months, reduction to pay grade E–1, and a bad-conduct discharge. The appellant had negotiated a pretrial agreement with the convening authority, however, that provided for the suspension of any punishment to confinement and any forfeitures for 6 months from the date of trial. When and how this agreement and the suspensions were carried out are the basis for the first two of the appellant's seven assignments of error.[1] Following the U.S. Supreme Court decision in *Weiss v. United States*, — U.S. —, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994), the appellant withdrew Assignments of Error III through VI. The

---

1. I. THE CONVENING AUTHORITY FAILED TO COMPLY WITH THE TERMS OF THE PRETRIAL AGREEMENT WHEN SHE ORDERED EXECUTED ALL ADJUDGED CONFINEMENT.

II. IF APPELLANT'S "SUSPENDED" CONFINEMENT COULD BE "VACATED" THROUGH A "VACATION" HEARING PRIOR TO THE CONVENING AUTHORITY ACTION, THEN APPELLANT'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT WERE VIOLATED IN THIS CASE BY THE REQUIREMENT THAT THE CONVENING AUTHORITY SERVE AS THE HEARING OFFICER FOR A VACATION HEARING.

III. THE COURT–MARTIAL DID NOT HAVE JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)

IV. THIS COURT HAS NO JURISDICTION BECAUSE ITS JUDGES ARE NOT APPOINTED TO FIXED TERMS OF OFFICE. (CITATION OMITTED.)

V. APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)

VI. BECAUSE THIS COURTS' JUDGES WERE APPOINTED IN VIOLATION OF THE APPOINTMENTS CLAUSE, THIS COURT HAS NO POWER TO REVIEW APPELLANT'S CASE. (CITATION OMITTED.)

VII. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF NAVY–MARINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS VIOLATES APPELLANT'S FIFTH AMENDMENT RIGHT TO AN IMPARTIAL JUDICIAL FORUM. (CITATION OMITTED.)

seventh is also without merit. *See United States v. Mitchell,* 39 M.J. 131 (C.M.A.1994).

In the first assigned error, the appellant complains that the officer exercising general court-martial jurisdiction (OEGCMJ) over his unit improperly vacated the suspensions for misconduct that occurred after trial but prior to the convening authority's action on the case. *See United States v. Kendra,* 31 M.J. 846 (N.M.C.M.R.1990), *pet. denied,* 32 M.J. 317 (C.M.A.1991); Rule for Courts–Martial (R.C.M.) 1109(b)(1). In the second, the appellant complains that his due process rights in connection with the vacation hearing were violated by the requirement that the special court-martial convening authority serve as the hearing officer. *See* R.C.M. 1109(d)(1)(A). We have concluded that the first is without merit, and we do not reach the constitutional issue in the second[2] because the Government did not satisfy the requirements of the Manual for Courts–Martial, United States, 1984 (M.C.M.), in conducting the hearing and acting on the recommendation. We have conducted this review of the vacation proceedings as part of our authorization under Article 66, UCMJ, 10 U.S.C. § 866. *See United States v. May,* 49 C.M.R. 625, 1974 WL 14130 (A.C.M.R.1974).

## I.

Approximately three weeks after trial, on 9 August 1993, the appellant was involved in an incident that became the basis for an allegation of misconduct. Written, unsworn statements were taken from five witnesses the following day by a command investigator, and 2 days later, on 12 August, the appellant was notified in accordance with R.C.M. 1109(d)(1)(B) of his commanding officer's intention, as the special court-martial convening authority, to hold a vacation hearing. That hearing was held 5 days later on 17 August 1993. The appellant was present at the hearing and represented by his trial defense counsel.

At the hearing, the appellant's commanding officer, in her capacity as the hearing officer, determined that none of the five witnesses were "reasonably available" and used their written statements as evidence of the appellant's misconduct. In the formal report of proceedings, filed the following day, the hearing officer recommended vacating the suspensions and stated, in pertinent part: "Neither the probationer [the appellant] nor his counsel had any objection to the evidence presented. No witnesses were present because all those present during the evening [when the alleged misconduct occurred] had already been discharged. There was no request to have any of the witnesses present." It is unclear to us just what the hearing officer meant by this latter statement, but it appears the hearing officer believed that no witnesses had to be present at the hearing unless the appellant requested them. Nevertheless, a week after the report was filed, the appellant's defense counsel submitted a letter to the OEGCMJ, via the hearing officer in her capacity as the appellant's commanding officer, in which he asserted that the proceedings were invalid (1) because the appellant was not advised of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b) at the proceedings[3] and (2) because the appellant was denied his right to confront and cross-examine the witnesses against him. In her endorsement on the defense counsel's letter, the hearing officer stated that the witnesses "had been discharged the previous week and some cost would have been incurred in ensuring their appearance."

The OEGCMJ did not receive the defense counsel's submission until after he had acted to vacate the suspensions, but in an endorsement on the defense counsel's letter, his staff judge advocate (SJA) stated that the five witnesses were assigned to the same unit as the appellant and were no longer in the area after being discharged. The SJA also re-

---

**2.** This Court recently addressed this issue in an unpublished opinion, *United States v. Early,* No. 9300983 (N.M.C.M.R. 14 February 1994), and cited *United States v. Bingham,* 3 M.J. 119 (C.M.A.1977), in deciding the issue contrary to the appellant's contention.

**3.** The hearing officer acknowledged that the appellant was not advised of his rights under Article 31 at the hearing but relied upon advice that had been given at some unspecified time during the investigation prior to the hearing. The hearing officer's report includes references to statements of the appellant at the hearing.

ferred to the lack of subpoena power at a vacation hearing and the hearing officer's lack of authority to expend funds for the attendance of witnesses. We conclude from all of this information that: (a) each of these five witnesses was under the command of the same officer who held the hearing; and, (b) that officer: (1) in her command capacity, permitted the discharge of all five sometime during the 7 days between 10 August, when their statements were taken, and 17 August, when the vacation hearing was held; and, (2) in her capacity as the vacation hearing officer, subsequently determined that all five were "reasonably unavailable" for the hearing.

The OEGCMJ approved the recommendation and vacated the suspension on 2 September 1993. The appellant's commanding officer did not take her action on the record of trial, however, until 10 September 1993. In that action, she suspended the punishments of confinement and forfeiture of pay in accordance with the terms of the pretrial agreement.

## II.

█ Turning to the issue concerning the time of the appellant's alleged misconduct, the appellant's pretrial agreement provided that the punishments "shall be suspended for a period of six (6) months *from the date of trial.*" (Emphasis added.) We have previously held that a vacation proceeding cannot be premised on misconduct that occurs outside the period of the suspension. *United States v. Schwab,* 30 M.J. 842 (N.M.C.M.R. 1990) (per curiam); R.C.M. 1109(b)(1). Although the period of a suspension ordinarily begins when the convening authority acts on the case to approve the sentence and suspend the punishment, *see* R.C.M. 1108(b), the convening authority and accused may agree that the period will run from the date the sentence was adjudged so that any misconduct that occurs after trial but prior to the actual suspension of the punishments when the convening authority acts on the case may be considered in the possible vacation of the suspension. *Kendra;* R.C.M. 705(c)(2)(D). One of the questions this case presents is whether the mere addition of those five

words ("from the date of trial") to the pretrial agreement is sufficient to constitute evidence of that understanding.

In addition to the equivalent of those five words, the pretrial agreement considered in *Kendra* included the statement: "Any violation of the UCMJ from the time the sentence is announced, not the convening authority's action, will be sufficient to initiate vacation proceedings, should the convening authority so desire." 31 M.J. at 847, n. 1. The military judge in *Kendra* also confirmed the accused's understanding of that sentence on the record following the announcement of the sentence. *Id.* at 848, n. 7. In the present case, the additional sentence does *not* appear in the pretrial agreement, and the military judge did *not* conduct any such inquiry.

We have recently held in *United States v. Lee,* No. 93 00900 (N.M.C.M.R. 14 January 1994) (per curiam), that just those five words in the pretrial agreement, without the additional sentence specifically mentioning violations of the UCMJ, *and* a similar inquiry by the military judge about the meaning of that phrase vis-a-vis the accused's possible misconduct immediately after trial *was* sufficient to establish the accused's understanding of the clause and permit the use of post-trial and pre-action misconduct as a basis for the vacation of a suspension. We reached this conclusion even though the accused and his counsel objected at the vacation hearing and asserted that the misconduct relied upon for that proceeding did not occur during the period of the suspension.

Although *Lee* is not a published decision and is not considered binding precedent by this Court, it illustrates that the underlying issue is whether the accused understood the agreement was to encompass misconduct during the period after trial and before the action. The military judge in *Lee* confirmed this was Lee's understanding even though Lee subsequently objected at the vacation hearing to the use of such "interim" misconduct. Here, *no* objection was made at the hearing to indicate that either the appellant or his trial defense counsel had any such misunderstanding concerning the meaning of the phrase that began the period of the suspension immediately after trial. In addi-

tion, we have already mentioned the letter the appellant's counsel sent to the OEGCMJ after the vacation hearing in which he expressed two legal objections to the vacation proceedings. Notably, that letter makes no mention of this issue or of any misunderstanding as to the possible use of post-trial/pre-action misconduct as a basis for the proceeding.

 Consequently, we conclude as to this first issue that the appellant understood the meaning and significance of beginning the period of suspension "from the date of trial" and that the OEGCMJ did not err in relying on misconduct that occurred after trial and before the convening authority acted as a basis for vacating the suspension.

### III.

 Having recognized that the period of a suspension may begin immediately after trial and that misconduct that occurs thereafter may be a basis for a vacation proceeding, a suspension, nevertheless, still does not exist until the convening authority has acted to approve the sentence. *United States v. Carter,* 32 M.J. 830 (N.M.C.M.R.1991) (per curiam); R.C.M. 1108(b). In other words, beginning the period of a suspension is conceptually different than the actual suspension. It is legally possible to begin the period of the suspension immediately after trial even though it is not legally possible to actually suspend part or all of the sentence until the convening authority has approved the sentence and ordered part of it suspended. Following this logical thread, it is not legally possible to vacate a suspension that does not yet exist. *Kendra; Schwab.* Therefore, (1) the parties may agree that post-trial/pre-action misconduct may be the basis for vacating a suspension, (2) the vacation hearing may occur and the hearing officer may make a recommendation prior to the action, but (3) the OEGCMJ may not actually vacate the

suspension until the convening authority has acted to approve the sentence and suspend the execution of all or part of that sentence. *Carter; Schwab.* Any attempt by the OEGCMJ to order vacation prior to the convening authority acting to approve the sentence and ordering the suspension would be a nullity because there is no suspension in effect to vacate until the suspension has been ordered. Consequently, as the Government concedes, the vacation in this case, on 2 September 1993, 8 days before the convening authority approved the sentence and suspended the punishments of confinement and forfeitures, was void and without legal effect.

Since the commencement of vacation proceedings interrupts the running of the period of the suspension, *see* R.C.M. 1109(b)(4), it may be argued that a premature vacation order could be corrected by the OEGCMJ simply issuing a new, timely order. Although there has been no attempt, so far, to do that in this case, the vacation hearing on which that order is premised must, itself, be valid. Consequently, we turn to a consideration of the appellant's vacation hearing.

### IV.

In conducting vacation hearings in cases that would be reviewed by this Court, the Manual for Courts–Martial requires, *inter alia,* that the probationer be notified of his "right to confront and cross-examine adverse witnesses unless the hearing officer determines that there is good cause for not allowing confrontation and cross-examination." R.C.M. 1109(d)(1)(B)(v).[4] The procedure for conducting the hearing is prescribed in R.C.M. 405(g), (h)(1), and (i), which is otherwise applicable to pretrial investigations under Article 32, UCMJ, 10 U.S.C. § 832. R.C.M. 1109(d)(1)(C). Rule 405 provides, in applicable part:

(g) *Production of witnesses and evidence; alternatives.*

---

4. The hearing officer's rather broad discretion to limit the actual appearance of witnesses at hearings under R.C.M. 1109(d) is in rather sharp contrast to the hearing rights of a probationer who is confined pending vacation proceedings under R.C.M. 1109(c). At the latter hearings, the probationer has "the right to confront and cross-examine adverse witnesses unless the hearing

officer determines that *this would subject these witness to risk or harm."* R.C.M. 1109(c)(4)(A)(iv). The "reasonably available" criterion applies only to witnesses requested by the probationer. *Id.* In addition, proceedings at hearings under R.C.M. 1109(c) are not cross-referenced to R.C.M. 405 provisions, as are those under R.C.M. 1109(d).

(1) *In general.*

(A) *Witnesses.* Except as provided in subsection (g)(4)(A) of this rule, any witness whose testimony would be relevant to the investigation and not cumulative shall be produced if reasonably available. This includes witnesses requested by the accused, if the request is timely. A witness is "reasonably available: when the witness is located within 100 miles of the situs of the investigation and the significance of the testimony and personal appearance of the witness outweighs the difficulty, expense, delay, and effect on military operations of obtaining the witness' appearance....

....

(2) *Determinations of reasonable availability.*

(A) *Military witnesses.* The investigating officer shall make an initial determination whether a military witness is reasonably available.... A determination by the immediate commander that the witness is not reasonably available is not subject to appeal by the accused but may be reviewed by the military judge under R.C.M. 906(b)(3).[5]

....

(D) *Action when witness ... is not reasonably available.* If the defense objects to a determination that a witness ... is not reasonably available, the investigating officer shall include a statement of the reasons for the determination in the report of the investigation.

....

(4) *Alternatives to testimony.*

(A) Unless the defense objects, an investigating officer may consider, regardless of the availability of the witness:

....

(vi) Unsworn statements....

(B) The investigating officer may consider, over objection of the defense, when the witness is not reasonably available:

....

(v) In time of war, unsworn statements.

(Footnote added.)

It appears from these rules that, since we were not in a time of war when this hearing was held, the hearing could not have proceeded if the appellant or his defense counsel had simply objected to the use of unsworn statements. As we have pointed out in our factual predicate, above, the hearing officer plainly stated that "[n]either the probationer [the appellant] nor his counsel had any objection to the evidence presented," and the defense counsel's post-hearing letter does not dispute that assertion. What the defense counsel objected to was the hearing officer's threshold determination that these witnesses were not reasonably available, but it appeared from the information included with the vacation proceedings and attached to the record of trial that this objection was not made at the time the hearing was held. Consequently, we specified the following issue:

DID THE APPELLANT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL, *see Strickland v. Washington,* 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674] (1984), WHEN HIS TRIAL DEFENSE COUNSEL FAILED TO OBJECT TO THE USE OF UNSWORN STATEMENTS AS EVIDENCE AT A VACATION HEARING HELD PURSUANT TO RULE FOR COURTS–MARTIAL (R.C.M.) 1109(d)(1)?

The filing of the order specifying this issue, however, crossed with the appellant submitting a motion to file the following supplemental assignment of error:

APPELLANT WAS DENIED DUE PROCESS WHEN DURING THE VACATION HEARING THE HEARING OFFICER CONSIDERED UNSWORN STATEMENTS AGAINST APPELLANT OVER THE OBJECTION OF HIS COUNSEL.

In support of this supplemental assignment, the appellant also moved to file an unsworn statement from his trial defense counsel. We denied that aspect of the motion with

---

5. There is nothing in R.C.M. 1109 to accommodate any review of a decision concerning the unavailability of a witness at a vacation hearing.

R.C.M. 906(b)(3) concerns correcting defects in an Article 32 investigation through the filing of a motion for appropriate relief.

leave to attach a sworn statement from counsel. A sworn statement was subsequently filed, in which the appellant's trial defense counsel states that he "objected to ... [the hearing officer's] use of unsworn statements in lieu of sworn testimony ..." and that, when the hearing officer nevertheless considered those statements, he subsequently argued that "the charges were not supported by competent evidence."

We granted the motion to file the supplemental assignment of error and stated that we considered our specified issue moot in light of the trial defense counsel's sworn assertion that he had objected to the use of unsworn statements. We did add, however, that if the Government had contrary factual information or contested the accuracy of the defense counsel's assertion, the specified issue would not be moot.

■ In its reply, the Government does contest whether the trial defense counsel actually objected to the use of unsworn statements, but it does so by making comparisons between the defense counsel's sworn statement and the unsworn statement we declined to accept and by referring to a telephone conversation between the Government appellate counsel and the trial defense counsel after the affidavit was filed. We do not find such references to be helpful in resolving what the Government seeks to raise as a factual issue. The appellant has since filed a second affidavit from his trial defense counsel in which he disputes the Government's representations. We note, however, that the Government has not submitted any amplifying information from the officer who conducted the hearing. From the information properly before us, we find (1) the objection to the use of unsworn statements as the sole basis for the vacation proceedings was made with sufficient specificity that it was not waived and (2) the hearing officer erred in continuing the hearing based only on those unsworn statements.[6] Consequently, the issue of ineffective assistance of counsel does

not arise, and we need not address the issues raised by the hearing officer's determination that the five witnesses were not reasonably available after she had permitted their respective releases from active duty within the few days immediately preceding the hearing.

The OEGCMJ's decision to vacate the suspension in this case, therefore, was both technically void because it predated the convening authority's decision to suspend punishments and substantively invalid because it was premised on an improperly conducted hearing. The appellant, therefore, was erroneously compelled to serve 2 months' confinement he should not have been required to serve.[7]

■ The question now arises as to what relief the appellant may be entitled as a result of these errors. The Government argues that the appellant has been convicted, on his plea of guilty, of serious offenses and setting aside the bad-conduct discharge would be an undeserved windfall. This Court has, nevertheless, provided meaningful relief when a servicemember has been required to serve a significant part of a sentence without complying with the requirements of R.C.M. 1109. *See United States v. Burnette*, No. 9300269 (N.M.C.M.R. Nov. 12, 1993) (punitive discharge not affirmed where no vacation hearing held yet accused was required to serve 90 days of confinement that should have been suspended under terms of pretrial agreement); *United States v. MacKinnon*, No. 92 0597 (N.M.C.M.R. Feb. 24, 1993) (punitive discharge not affirmed where no vacation hearing held yet accused required to serve 3½ months confinement that should have been suspended under terms of pretrial agreement). As we have indicated in these earlier decisions, "we see no way to fashion a meaningful remedy solely out of the confinement and forfeitures adjudged" when an accused has been improperly required to serve a significant period of confinement and any forfeitures have not been collected and

---

6. It appears the only witnesses produced against the appellant at the hearing were the two investigators that took the unsworn statements from the five witnesses.

7. From information submitted as part of the pleadings in this case, it appears the forfeitures were never collected from the appellant despite the OEGCMJ's decision to vacate their suspension as well as the suspension of confinement.

remain uncollectable. *MacKinnon,* slip op. at 3.

Accordingly, the findings of guilty are affirmed. Only so much of the sentence as provides for confinement for 2 months, the forfeiture of $540.00 pay per month for 2 months, and reduction to pay grade E–1 is affirmed.

Senior Judge REED and Judge DeCICCO concur.