**UNITED STATES**

v.

**Holger ENGLERT, 332 64 9173, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 94 00672.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 25 May 1993.

Decided 30 June 1995.

---

Maj. Steven P. Hammond, USMC, Appellate Defense Counsel.

LT Steven J. Coaty, JAGC, USNR, Appellate Government Counsel.

Before LARSON, Chief Judge, WELCH, Senior Judge, and McLAUGHLIN, J.

LARSON, Chief Judge:

The question presented in this appeal is whether the record of proceedings of a post-trial hearing establishes sufficient grounds to nullify the sentence limitation provision of the pretrial agreement based upon post-trial misconduct by the appellant. We find that it does not, and we hold that the convening authority erred when he failed to suspend the bad-conduct discharge in compliance with the pretrial agreement.

## I.

In compliance with the terms of his pre-trial agreement, the appellant pleaded guilty at a special court-martial, before a military judge sitting alone, to conspiracy to steal and theft of a computer disk-drive, in violation of Articles 81 and 121, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 881, 921, respectively. He was convicted of those offenses and sentenced to confinement for 3 months, forfeiture of $500.00 pay per month for 3 months, reduction to pay grade E–1, and a bad-conduct discharge.

The agreement required the convening authority to suspend the punitive discharge for 12 months from the date of his action. Another provision of the agreement stated that the convening authority would not be required to honor the suspension provision if the appellant engaged in any misconduct between the date of trial and the date of the convening authority's action. The term "misconduct" was defined in the agreement and by the military judge at trial as any "act or omission that is chargeable as an offense under the UCMJ." Record at 27. The agreement further provided that, before the appellant could lose the protection of the suspension provision, he would be entitled to a hearing similar in nature to that provided by Article 72, UCMJ, 10 U.S.C. § 872 and Rule for Courts–Martial [R.C.M.] 1109(d).

## II.

On 20 November 1993, before the convening authority took his action, the appellant was charged by civilian authorities with possession of methamphetamine, in violation of the laws of California. A document accompanying the arrest report, entitled "Probable Cause Declaration," reveals that police were led to the appellant's apartment by tips concerning an unrelated homicide. The appellant, who was not at home at the time, was never a suspect of that crime. Apparently, other occupants of the apartment were present and admitted the police. Eventually, the police searched the apartment after obtaining a warrant to do so. In the appellant's bedroom, they found a bag of white powder that later was tested and found to be methamphetamine. The bag was found in a drawer

next to a wallet bearing the appellant's name and social security card. They also discovered and seized a mirror containing residue and a razor blade in the kitchen.

The civilian authorities declined to prosecute the appellant for possession of methamphetamine and the matter was turned over to the appellant's command. On 1 December 1993, following proper notice, the appellant appeared at a hearing before the convening authority, who acted as the hearing officer pursuant to R.C.M. 1109. The purpose of the hearing was to determine whether there was probable cause to believe that the appellant had violated the post-trial misconduct clause of the pretrial agreement by possessing illegal drugs in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, and if so, whether to recommend to the officer exercising general court-martial jurisdiction over the appellant [hereinafter "the OEGCMJ"] that he set aside the suspension provision of the pretrial agreement.

The appellant was represented by his trial defense counsel at the hearing. The evidence against him consisted of the arrest report and the probable clause declaration, both of which were considered by the hearing officer without objection. Report of Proceedings to Vacate Suspension [hereinafter "Report"] Exs. 2 and 3. The appellant presented the testimony of six witnesses. In summary, all six stated that they had known the appellant for some time (varying from 8 months to 2 years) and that they had never seen him use drugs. Several of them added that the drugs in question belonged to another Marine on active duty, identified hereafter as PM. Those who mentioned PM reported conversations they had with him during which he had admitted ownership of the drugs. They all stated they had observed PM using drugs but never in the appellant's company. Report Ex. 4.

The appellant declined to make a statement under oath but without objection, he did answer questions posed by the hearing officer. In summary, he stated that, in addition to himself, two other roommates shared his apartment; that PM was a friend of one of the roommates; that he permitted PM to use his room for 3 or 4 days; that PM was

asleep in the room at the time the police searched the apartment; that he [the appellant] lived in another apartment now; and that he had never seen PM with drugs. Report Ex. 4 at 5. The hearing officer closed the hearing after making the following comments:

> After listening to your witnesses and listening to you, I determined that both the Marine Corps and you are best served with you no longer being in the Marine Corps. Therefore, I recommend to the CG, 3d MAW that he set aside the sentencing provisions of your pretrial agreement, that is to suspend your BCD and that the suspension be set aside and that the BCD be executed and you try to get your life together in the civilian world. It just seems to me that an individual who is on suspended BCD, and has gone to a SPCM and on a suspended BCD has to walk the straight and narrow and be careful with every move he makes and ensure that his surroundings aren't such that he could be implicated or suggested that he's not going to renew commitment to the USMC and you failed to do that. You lived out in town and with some people of questionable character. You had an individual come stay with you for a short while. Six witnesses seen [sic] him use drugs and you say you never did. And I don't believe that to be honest, so we need to vacate your suspension and return you to civilian life. You're dismissed.

Report Ex. 4 at 6. The hearing officer then forwarded his recommendation to the OEGCMJ.

On 8 February 1994, the OEGCMJ accepted the recommendation and found that the convening authority was no longer bound by the sentencing limitations. His only explanation for his decision was that "Lance Corporal Englert violated the terms of the pretrial agreement when he committed post-trial misconduct." Report at 4. On 28 February 1994, the convening authority approved the sentence as adjudged and did not suspend the bad-conduct discharge.

On appeal, the appellant claims that: (1) the pretrial agreement was improperly set aside because insufficient evidence was presented to support a finding of misconduct at the R.C.M. 1109 hearing, and (2) the OEGCMJ failed to provide a written statement to support his decision to set aside the agreement as required by R.C.M. 1109(d)(2)(A). The Government argues that the OEGCMJ's signature and brief explanation set forth above satisfy R.C.M. 1109(d)(2)(A), and that the evidence was sufficient to find by a preponderance that the appellant was in constructive possession of illegal drugs. We concur with the appellant, and we hold that the OEGCMJ's decision to set aside the sentence limitations of the pretrial agreement is not justified on the basis of this record. However, we do so for slightly different reasons than those stated in the appellant's brief.

### III.

■ A post-trial misconduct clause, similar to the one in this case, is valid **only** if: (1) its terms are sufficiently clear and (2) the accused is afforded his right to due process through a hearing before it is enforced. *United States v. Dawson,* 10 M.J. 142 (C.M.A.1981); *United States v. Holt,* 12 M.J. 525 (N.M.C.M.R.1981), *petition denied,* 20 M.J. 369 (C.M.A.1985); *United States v. Thomas,* 10 M.J. 766 (N.C.M.R.1981). The hearing is adequate for this purpose if it provides the accused the fundamental due process protections required in probation revocation hearings, as set forth by the Supreme Court in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *United States v. Bingham,* 3 M.J. 119 (C.M.A.1977).[1] The procedure used in this case—a vacation of suspension hearing, conducted pursuant to Article 72, UCMJ—does afford an accused these fundamental due process protections and therefore satisfies this requirement. R.C.M. 1109(d).

---

1. These protections include proper notice, opportunity to confront the Government's evidence, opportunity to present evidence, a record of the hearing, and a determination by the hearing officer based on evidence of record. *Bingham,* 3 M.J. at 121.

■ Our next area of inquiry is whether the hearing in this case was actually conducted in accordance with R.C.M. 1109(d). Under R.C.M. 1109(d) and the relevant case law, the hearing officer must be the special court-martial convening authority himself. *United States v. Rozycki*, 3 M.J. 127 (C.M.A.1977). With certain exceptions (not applicable here), the rules of evidence do not apply, and the hearing officer may consider sworn statements in lieu of live testimony. *United States v. Saylor*, 40 M.J. 715 (N.M.C.M.R. 1994).[2] To justify a recommendation to set aside the sentence limitation provision of the pretrial agreement, the hearing officer must be convinced by a preponderance of the evidence that the appellant in fact committed misconduct, i.e. that he violated an article of the UCMJ during the relevant period of time. Furthermore, the record must clearly support this result. In other words, the record of proceedings must contain findings by the hearing officer based on verified facts that show a violation of the UCMJ. *United States v. Dupuis*, 10 M.J. 650 (N.C.M.R. 1980); *United States v. Ward*, 5 M.J. 685 (N.C.M.R.1978).

This is more than just a technical or administrative requirement. Such findings are basic to the concept of due process. *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604; *Bingham*, 3 M.J. at 123. They assure all parties that the decision that ultimately results from the hearing is based upon proper and adequate evidence. Furthermore, they assure the accused that the misconduct he is found to have committed is the same misconduct, or at least similar to the misconduct with which he was charged and on notice to defend himself. Finally, such findings are essential in order to complete the record for review by appellate authorities. *Dupuis*, 10 M.J. at 653.

IV.

In this record, the hearing officer made no such findings. To be specific, he made no finding that the methamphetamine found in the appellant's apartment belonged to the appellant. If anything, his conclusions appear to recognize PM as the owner of the drugs. The Government contends that the hearing officer could still have found the appellant in constructive possession of those same drugs by knowingly permitting PM to store them in a place over which the appellant exercised dominion and control. *United States v. Wilson*, 7 M.J. 290, 293 (C.M.A. 1979). It is possible that the evidence in this record would have supported such a finding. However, we need not decide that question because no such finding was made. At most, the hearing officer found that the appellant knew that PM was a drug abuser. He made no express finding that the appellant was aware of the presence of the specific drugs in question. Furthermore, we cannot infer such a finding because the essence of the hearing officer's comments is that the appellant's misconduct is based not upon any involvement with or knowledge of these specific drugs but upon his general *association* with a drug abuser and other persons of questionable character. This association does not, by itself, violate the UCMJ, nor does it permit, by inference, a finding of constructive possession of illegal drugs.[3] *United States v. Seger*, 25 M.J. 420, 422 (C.M.A.1988).

The error in failing to specifically find the appellant in violation of the UCMJ was compounded by the failure of the OEGCMJ to provide a statement of the evidence relied on for his determination and the reasons there-

---

2. We question whether the hearing officer would have been authorized to consider the probable cause declaration, which was the source of virtually all the essential incriminating facts in the hearing, under R.C.M. 1109(d)(1)(C) and R.C.M. 405(g)(4) and (5), had the appellant objected at the time. We do so because, notwithstanding its characterization as a "declaration," there is no indication on the face of the document that the declarant was sworn. *United States v. Saylor*, 40 M.J. 715 (N.M.C.M.R.1994). However, no objection was raised and the matter is waived.

3. A requirement not to associate with drug users may be a valid condition of suspension of a sentence at court-martial. *United States v. Lallande*, 22 C.M.A. 170, 46 C.M.R. 170 (1973); *United States v. Bigler*, 50 C.M.R. 818 (N.C.M.R. 1975). However, we need not decide this question because it was not an express provision in this pretrial agreement.

fore. R.C.M. 1109(d)(2)(A). Again, this requirement is not just technical or administrative in nature. It, too, is an important feature of the due process that is guaranteed in such proceedings. *Rozycki; Bingham; Ward.* Here, the OEGCMJ provided no assessment or evaluation beyond the general conclusion that the appellant had engaged in misconduct. We do not agree with the Government's position that this complied with R.C.M. 1109(d)(2)(A). This shortcoming, coupled with the absence of necessary findings by the hearing officer, leaves us with a record that does not support the convening authority's unilateral cancellation of the pretrial agreement. Accordingly, we hold that the convening authority's abrogation of the suspension provision of the pretrial agreement was unlawful.

### V.

■ Left for consideration is the appropriate relief due the appellant. Generally, if a plea bargain is not complied with, a court must either order compliance with the bargain or the appellant must be permitted to withdraw his plea of guilty. *United States v. Cifuentes,* 11 M.J. 385, 387 (C.M.A.1981) (citing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Considering the passage of time, in general, and, in particular, the fact that the bargained-for suspension period has passed, the reasonable remedy is to grant the appellant the ultimate benefit of his bargain by not affirming the bad-conduct discharge, which would have been remitted but for the setting aside of the pretrial agreement.

Accordingly, the findings of guilty and only so much of the sentence as provides for confinement for 3 months, forfeiture of $500.00 pay per month for 3 months, and reduction to pay grade E–1 are affirmed.

Senior Judge WELCH and Judge McLAUGHLIN concur.