*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
STEPHENS, FOIL, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Tanner M. GRIFFIN**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 201900308**

Decided: 19 May 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Keaton H. Harrell

Sentence adjudged 17 July 2019 by a special court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for five months, and a bad-conduct discharge.[1]

For Appellant:
*Major Brian L. Farrell, USMCR*

---

[1] The convening authority suspended confinement in excess of two months and the bad-conduct discharge pursuant to a pretrial agreement. This suspension was later vacated by the convening authority.

For Appellee:
*Lieutenant Jennifer Joseph, JAGC, USN*
*Lieutenant Kimberly Rios, JAGC, USN*

_____

**PUBLISHED OPINION OF THE COURT**

_____

FOIL, Judge:

Appellant was convicted in accordance with his pleas of assault consummated by a battery and wrongful broadcast of intimate visual images in violation of Articles 128 and 117a, Uniform Code of Military Justice [UCMJ].[2]

Appellant asserts two assignments of error [AOEs]: (1) the Court should set aside or reassess the sentence that was imposed on the basis of improper argument by the trial counsel; and (2) the Court should refuse to accept for appellate review a record that is not substantially complete and has not been certified by the detailed court reporter.

In the second AOE, Appellant asserts the record was not substantially complete for the following reasons: (a) it has not been certified by the detailed court reporter; (b) it lacked a staff judge advocate pretrial recommendation; (c) it lacked a record of vacation proceedings; (d) it included two documents marked as appellate exhibits which were not mentioned in the transcript; and (e) it lacked a document that was marked as a prosecution exhibit. The Government produced the missing documents and we granted its motion to attach them to the record of trial.

Appellant also asserts four additional AOEs in a supplemental brief:

(3) *Did the hearing officer's failure to resolve the disputed level of violence of Appellant's alleged misconduct conflict with the requirement in* **United State v. Miley***?*

(4) *Should military servicemembers have heightened minimum Due Process rights at a vacation hearing— requiring a verbatim transcript and a meaningful*

_____

[2] 10 U.S.C. §§ 928, 917a.

> *right to present witnesses and evidence—than those*
> *provided to civilians at parole revocation hearing*
> *pursuant to* **Morrissey v. Brewer***?*

**(5)** ***Did the pretrial agreement terms violate appellate***
***law and public policy because, by their plain lan-***
***guage, they placed Appellant on probation irrespec-***
***tive of his status of being subject to the UCMJ?***

**(6)** ***Did the pretrial agreement's failure to define "a ma-***
***terial breach" violate appellate law and public policy,***
***and did the military judge abuse his discretion by***
***failing to inquire as to the parties' understanding of***
***this provision?***

We have carefully considered the second, fifth, and sixth AOEs and find they are without merit and do not require further discussion or warrant relief.[3]

In conducting our Article 66(b), UCMJ, review, we examined the additional issue of whether there was a substantial basis in law and fact to question the providence of Appellant's guilty plea to Article 117a.

After reviewing the record of trial and the parties' briefs, we find no prejudicial error and we affirm the findings and sentence.

## I. BACKGROUND

Appellant and Lance Corporal [LCpl] Papa,[4] who was his girlfriend at the time, got into an argument in his barracks room when she found pornography on his phone. The argument became physical and led to an assault of LCpl Papa by Appellant who held her down and forcibly kissed her. LCpl Papa escaped by running out of the room.

Appellant admitted to previously recording videos of himself and LCpl Papa, with her consent, having sexual intercourse and performing oral sex on him in her barracks room. LCpl Papa broke up with Appellant after the assault incident. To get revenge, Appellant created an account on an

---

[3] *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

[4] All names in this opinion, other than those of the judges and counsel, are pseudonyms.

online pornography site and uploaded the videos, without LCpl Papa's consent, on two separate occasions in September and October of 2018. Appellant admitted during the providence inquiry that the videos were observable to anyone browsing this website.

During the sentencing phase of the court-martial, Appellant made an unsworn statement and asserted that after the investigation began he went into his account and deleted the videos.[5] The Government called LCpl Papa as a rebuttal witness, and she testified under oath that she emailed the site's administrators to take down the videos that were uploaded without her consent.[6] After LCpl Papa's testimony, the defense counsel recalled Appellant in surrebuttal to give an additional unsworn statement. Appellant reaffirmed that he took down his video and deleted the account the same day law enforcement contacted him in the investigation.[7]

In its sentencing argument, the Government argued that there was conflicting testimony as to how the videos got removed. It further stated that only one of the witnesses was subject to cross-examination. Defense counsel argued that Appellant took responsibility for his actions and that his deletion of the account probably occurred contemporaneously with the actions taken by LCpl Papa.

On 6 September 2019, the convening authority suspended all confinement in excess of two months for twelve months from the Entry of Judgment and suspended the bad-conduct discharge until the end of Appellant's end of active obligated service. The Entry of Judgment was signed on 30 October 2019. On 5 October 2019, Appellant was arrested for assaulting his wife and for false imprisonment by the Jacksonville, North Carolina Police Department. On 14 November 2019, Appellant pleaded guilty to these charges in civilian court.

The convening authority appointed a hearing officer to conduct proceedings on whether to vacate the suspension of the suspended portion of his sentence. Appellant was advised of his rights at the proceeding and he elected to be represented by his detailed defense counsel. The hearing officer considered the evidence, including an unsworn statement from Appellant,

---

[5] R. at 68.

[6] *Id*. at 73.

[7] *Id*. at 75.

and recommended vacating the suspension of the sentence. The convening authority vacated the suspension of the sentence on 18 December 2019.

## II. DISCUSSION

### A. Improper Argument

Improper argument is a question of law that we review de novo. *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011). The Government pointed out during its sentencing argument that there was conflicting testimony and that only LCpl Papa testified under oath. There was no objection at trial by Appellant to the comments made by the Government during the sentencing argument. If not objected to at trial, the issue of improper argument is reviewed for plain error, which is error that is plain or obvious that is materially prejudicial to a substantial right of the accused. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005).

The Government may argue in closing that an accused making an unsworn statement cannot be cross-examined as well as point out sworn testimony that conflicts with the unsworn statement. *United States v. Marsh*, 70, M.J. 101, 105 (C.A.A.F. 2011). Oral and written unsworn statements are not made under oath, so merely urging the Court to consider an unsworn statement for what it is—and by extension, what it is not—falls within the boundary of fair prosecutorial comment. *United States v. Breese*, 11 M.J. 17, 24 (C.M.A. 1981).

Here, the Government was properly pointing out a conflict between LCpl Papa's testimony and Appellant's unsworn statement. The Government's comments were permissible and did not constitute error, let alone plain error, in this military judge alone trial.

### B. Vacation Proceedings

In order to vacate the suspension of a sentence, the Government must prove by a preponderance of the evidence that the accused committed a violation of the UCMJ. *United States v. Englert*, 42 M.J. 827, 831 (N-M. Ct. Crim. App. Oct. 31, 2011). Appellant argues that the hearing officer failed to comply with *United States v. Miley*, 59 M.J. 300 (C.A.A.F. 2004), by not resolving the level of violence for the misconduct. The appellant in *Miley* claimed innocent ingestion and denied wrongfully using drugs. But here, Appellant admitted during the vacation proceeding that he committed the misconduct which would be a violation of Article 128, UCMJ. To the extent that there was a dispute from Appellant, it was over the level of violence, not over whether he committed an assault. The Government also presented Appellant's record of conviction that documented his guilty plea in civilian

court to assault and false imprisonment. Appellant did not contest the accuracy of that record. Because there were no unresolved facts concerning whether he committed misconduct amounting to a violation of Article 128, there was no error.

Appellant appeared at the hearing with his detailed defense counsel and he was given the opportunity to present evidence. Appellant provided an unsworn statement. He also stated that he did not object to any of the exhibits offered by the Government. A verbatim transcript for vacation proceedings is not required by Rule for Courts-Martial 1108. As the hearing met the requirements of Article 72, UCMJ, there was no error.

## C. Providence of the Plea

In *United States v. Murray*,[8] this Court found the appellant's guilty plea to violating a lawful general regulation for sexual harassment was improvident for conduct that was similar to this case. The appellant in *Murray* made three sexual videos with a shipmate. While all the sex acts were consensual, only one of the videos was made with the victim's consent, which was expressly conditioned on the appellant's agreement not to further distribute the videos. Murray later posted all the videos on a pornography sharing website without the victim's knowledge or consent while identifying her full name and the fact that she was a Sailor while also labeling it in such a way as to sexually denigrate her. At issue was whether the posting of the videos created a hostile work environment as defined by the Navy regulation on sexual harassment.[9] The appellant in *Murray* was charged under Article 92 because Article 117a was not in effect at that time. The Court found the military judge did not elicit sufficient facts from Murray to support that *he*, rather than others, made the workplace hostile to the victim.

Here, Appellant pleaded guilty to wrongful broadcast of intimate visual images in violation of Article 117a. The terminal element of this offense requires the Government to establish that "[Appellant's] conduct, under the circumstances, had a reasonably direct and palpable connection to a military mission or military environment." In his colloquy with the military judge,

---

[8] No. 201800163, 2019 CCA LEXIS 483 (N-M. Ct. Crim. App. Dec. 5, 2019) (unpublished).

[9] *See* Sec'y of the Navy Instr. 5300.26D, *Department of the Navy (DON) Policy on Sexual Harassment*, encl. 2 (Jan. 3, 2006) (defining the range of behaviors which constitute sexual harassment).

Appellant testified that he believed his actions were harmful to the victim's career, reputation and relationships.[10] He stated that his actions affected the mission environment, because the videos were recorded in what was unmistakably a military barracks room.[11] He further testified that other Marines who worked with the victim were aware of the videos, and that caused a distraction for her from her duties in the military workplace.[12] As a result of his thorough providence inquiry, the military judge found that Appellant's conduct impacted the accomplishment of the military mission and was directly connected to a military environment even though Appellant did not work in the same workplace as the victim.[13]

Given Article 117a's more expansive reach as well as the additional questioning by the military judge, we find no shortcoming such as we found in *Murray*. The terminal element for Article 117a is broader than a charge of sexual harassment under Article 92 by creating a hostile work environment. Appellant does not have to work in the same workplace as the victim to be found guilty of violating Article 117a. If an appellant can articulate—as Appellant did here—that his conduct had a direct and palpable connection to the military mission or environment, then it does not matter whether he and the victim worked in the same workplace.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[14]

The findings and sentence are **AFFIRMED**.

---

[10] R. at 41.

[11] *Id*. at 42.

[12] *Id*. at 43.

[13] *Id*. at 45.

[14] UCMJ arts. 59, 66.



FOR THE COURT:

RODGER A. DREW, JR.